UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL ARNOLD, DANIEL**
**CORRALEZ, and ERIC LAHTI,**

       **Plaintiffs,**          **CIVIL ACTION NO. 13-CV-14137**

    **vs.**                   **DISTRICT JUDGE PAUL D. BORMAN**

                                 **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DANIEL H. HEYNS, MICHAEL**
**MARTIN, and BRAD PURVIS, in**
**their official capacities,**

       **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiffs Michael Arnold, Daniel Corralez, and Eric Lahti, currently prisoners at the Central Michigan Correctional Facility (STF) in St. Louis, Michigan, have filed this action under 42 U.S.C. § 1983 against Daniel Heyns (Director of the Michigan Department of Corrections (MDOC)), Michael Martin (Special Activities Coordinator for MDOC), and Brad Purves (Food Service Director for MDOC), in their official capacities, alleging that Defendants have violated Plaintiffs' rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA), by implementing MDOC Policy Directive (P.D.) 05.03.150, under which MDOC replaced all previously offered religious menus with a Vegan menu.  (Docket no. 1.)  Plaintiffs, three Orthodox Jews, seek a declaratory judgment finding that (1) Defendants have violated the First and Fourteenth Amendments and RLUIPA by "forcing the Plaintiffs to eat a religious diet that does not comport with their beliefs," and (2) Defendants have violated the Fourteenth Amendment by "denying the Plaintiffs the opportunity to

1

purchase Kosher Meat and dairy products" in the commissary. (*Id.* at 14-15.) Further, Plaintiffs seek preliminary injunctive relief "prohibiting . . . enforcement of a Vegan diet from taking place on the scheduled date,"[1] and prohibiting Defendants from taking retaliatory action against Plaintiffs; and Plaintiffs seek permanent injunctive relief ordering Defendants "to develop procedures that would allow prisoners who are Jewish to order Kosher Meat and dairy products so that the Plaintiffs can obtain Kosher Meat and dairy products at their own expense from vendors."[2] (*Id.* at 15.) Plaintiffs do not seek monetary damages.

Before the Court are Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction (docket no. 3) and Defendants' Motion to Dismiss (docket no. 14). Defendants have not responded to Plaintiff's Motion for a TRO or Preliminary Injunction. Plaintiffs filed a Response to Defendants' Motion to Dismiss. (Docket no. 15.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 11.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this report and recommendation.

**I.     Recommendation**

For the reasons stated herein, the undersigned recommends as follows:

(1)    Defendants' Motion to Dismiss [14] should be granted in part and denied in part.

---

[1] As discussed herein, PD 05.03.150 was scheduled to be implemented at STF the week of September 15, 2013. Plaintiffs appear to have drafted their Complaint on September 8, 2013, but did not file their Complaint until September 27, 2012. Therefore, PD 05.03.150 was implemented before the Court could consider Plaintiffs' requests.

[2] In liberally construing Plaintiffs' pro se Complaint, the undersigned presumes that Plaintiffs also seek permanent injunctive relief against implementation of the Vegan diet program.

>    Plaintiffs' claims related to the MDOC's washing of trays and utensils should be dismissed. Defendants' Motion should be denied with regard to Plaintiffs' remaining First Amendment and RLUIPA claims.

(2) The Court should sua sponte dismiss Plaintiffs' Fourteenth Amendment Claims under 28 U.S.C. § 1915.

(3) Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction [3] should be denied.

## II.   Report

### A.   Facts

MDOC Policy Directive 05.03.150, which took effect on July 26, 2013, states in relevant part as follows:

> The Department offers a religious menu to meet the religious dietary needs of prisoners. The Department will begin offering a Vegan menu which will replace all currently approved religious menus on the following dates for the listed facilities:
>
>> 1.   The week of September 15, 2013: . . . Central Michigan Correctional Facility.
>
> . . .
>
> The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals". The Deputy Director or designee shall determine at which facilities religious meals will be offered.

MDOC PD 05.03.150 (PP). When this vegan menu took effect, Prisoners who ate from the "main line" would continue to have a variety of foods available to them, including meat and dairy.

In their Complaint, Plaintiffs allege that "[they] are Orthodox Jews" and that "[t]heir religious beliefs do not command them to practice vegetarianism or to be a Vegan." (Docket no. 1 at 8.) Specifically, they allege that they are required to follow "the mitzvah (commandment) to eat meat and keep kosher;" that a Vegan diet is not a Kosher diet; that even if a Vegan diet could be Kosher, it "will not actually be kosher . . . because of how the MDOC washes its trays and utensils;" and that "MDOC could make Kosher meat products (and dairy products such as cheese) products (sic) available to Jewish prisoners for purchase, but is has chosen not to." (*Id.* at 10, 13.)

In their Motion for a TRO, Plaintiffs allege that Defendants' actions are discriminatory, that "ingesting large amounts of soy products [can detrimentally] raise the estrogen levels in men," and that Plaintiffs' claims justify a TRO. (Docket no. 3.) In their Motion to Dismiss, Defendants assert that PD 05.03.150 does not violate the First Amendment or RLUIPA and that Plaintiffs fail to state a claim under Fed. R. Civ. P. 12(b)(6).[3]

**B.     Analysis**

      **1.     Defendants' Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's

---

[3]Defendants also assert that Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because "Plaintiffs' Complaint fails to allege facts establishing a substantial federal question sufficient to invoke federal jurisdiction." (Docket no. 14 at 2.) Defendants, however, fail to expand on this summary conclusion.

"factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### i. Plaintiffs' First Amendment and RLUIPA Claims

To establish a claim under the First Amendment, a plaintiff must demonstrate that the defendant's conduct or policy infringes on the plaintiff's sincerely held religious practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir.1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir.2001); *Bakr v. Johnson*, No. 95–2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997). Similarly, "[t]he threshold inquiry under RLUIPA is whether the challenged governmental

action substantially burdens the exercise of religion."[4] *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir.2007); *see Barhite v. Caruso*, No. 09–1312, 2010 WL 1957493, at *3 (6th Cir. May 14, 2010) ("RLUIPA [ ] requires an inmate to show that his or her religious exercise [is] substantially burdened."); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733 (6th Cir. 2007). A substantial burden exists "when [an] action force[s] an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"[5] *Living Water Church of God*, 285 F. App'x at 734 (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 717–18 (1981)).

Defendants contend that Plaintiffs have not alleged a "substantial burden" on religious exercise, and therefore, they are not entitled to any relief under RLUIPA (or the First Amendment). (Docket no. 14 at 10-12). Primarily, Defendants assert that providing a Vegan meal and not offering Plaintiffs Kosher meats or dairy does not place a substantial burden on Plaintiffs' religious exercise

---

[4]Congress passed RLUIPA in 2000 to make the Religious Freedom Restoration Act's strict-scrutiny standard applicable, as pertinent to this case, whenever a substantial burden is placed on religious exercise by a state government when it occurs in a program or activity that receives federal financial assistance. *Cutter v. Wilkinson*, 423 F.3d 579, 582-83 (6th Cir. 2005). Defendants do not contend that the program or activity at issue in this case does not receive federal financial assistance. *See Kaufman v. Carter*, 952 F. Supp. 520, 527 (W.D. Mich. 1996) ("It is not disputed that the Michigan Department of Corrections receives federal financial assistance.").

[5]"The U.S. Supreme Court has not yet defined 'substantial burden' as it applies to RLUIPA. Neither does the statute itself contain any definition of the term. The statute's legislative history, however, indicates that the 'term "substantial burden" as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise.'" *Living Water Church of God*, 285 F. App'x at *733-34 (citing 146 Cong. Rec. S7774–01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy)).

because the Vegan meal itself is Kosher.[6] (*Id.* at 11-12.) Plaintiffs, however, claim that they are under a "Biblical mitzvah (commandment) to eat meat." (Docket no. 1 ¶ 28.) Defendants' argument relies on this Court's holding in *Dowdy-El v. Caruso*, No. 06-11765, 2013 WL 6094695 (E.D. Mich. Nov. 20, 2013), and the U.S. District Court for the Western District of Michigan's holding in *McKenzie v. Michigan Dep't of Corr.*, No. 13-291, 2013 WL 5963115 (W.D. Mich. Nov. 8, 2013).

In *Dowdy-El*, this Court ordered the MDOC to provide Muslim inmates with a halal diet. *See Dowdy El*, 2013 WL 6094695 at \*2. The Court noted that under the terms of a settlement agreement, "[t]he halal diet that will be provided is a vegan meal by an outside vendor and *is intended* to comply with all religious dietary restrictions, *including Kosher*. *Id.* (emphasis added). When the Muslim inmates objected to this settlement, the Court found as follows:

> How [the MDOC] provides such a halal meal (i.e., whether it provides for halal meat or not) was not part of the settlement. In other words, while a prisoner has a right to a meal that meets religious restrictions, they do not necessarily have a right to a meal which provides meat.
>
> Moreover, the controlling policy directive provides for two safeguards: (1) all religious diets must satisfy the nutritional needs of the inmates, and (2) any inmate who believes the provided mail is not in accord with his or her religious dictates may petition the MDOC for an alternative meal.

*Id.* at \*5. Additionally, like Plaintiffs, the inmates in *Dowdy-El* complained that the Vegan meal was nutritionally deficient. *Id.* The Court found that the health concerns were "an issue beyond the settlement" and that the policy "provides for an alternate meal if the religious (vegan) meal does not meet an inmate's requirements." *Id.* at \*6. Finally, and again like Plaintiffs, the *Dowdy-El* inmates argued that the halal meals would be cross-contaminated because of how they were prepared and

---

[6]Notably, Defendants implicitly acknowledge, as they must, that failing or refusing to provide a Kosher meal would place a substantial burden on Plaintiffs' religious exercise.

7

served. *Id.* The Court found that MDOC had committed to avoiding cross-contamination and that Aramark, MDOC's outside meal contractor, had its own certification process and procedures. *Id.* at *6-7.

Defendants' reliance on *Dowdy-El* is somewhat misplaced. While Defendants are correct that the Court discussed cross-contamination and found that the vegan meals were *intended* to comply with Kosher restrictions, the Court did not find that the vegan meals *were* Kosher, and it did not find that Aramark and MDOC avoided cross-contamination. *See id.* at *2, 6-7. Any further finding was outside the Court's inquiry. Nevertheless, the undersigned agrees with Defendants that Plaintiffs' claims with regard to cross-contamination should be dismissed. Plaintiffs' Complaint only mentions cross-contamination one time, and it does so in passing:

> The Plaintiffs, by virtue of being Jewish, has (sic) been forced to choose between being forced to be a Vegan, a diet that is based on religious precepts that he (sic) does not hold and *which will not actually be kosher in any case because of how the MDOC washes its trays and utensils*, or eating from the "main line" (general population) menu, i.e., eating food that is most assurredly (sic) not kosher, which includes Pork.

(Docket no. 1 ¶ 27 (emphasis added).) Plaintiffs' threadbare assertion, which contains no factual allegations regarding how the MDOC's washing procedures are improper, is not sufficient to state a plausible claim for relief. Therefore, Plaintiffs' claims related to whether the MDOC's washing of trays and utensils meets kosher requirements should be dismissed.

In *McKenzie*, a case very similar to the one at hand, six Jewish inmates alleged that the MDOC's implementation of PD 05.03.150 violated their rights under the First Amendment. *McKenzie*, 2013 WL 5963115. In addition to finding that Plaintiffs' claims against the MDOC were barred by the Eleventh Amendment, the court found that Plaintiffs had "fail[ed] to allege facts demonstrating that a Kosher vegan diet place[d] a substantial burden on their ability to practice the

8

tenets of the Jewish faith." *Id.* at *4. The court noted that the inmates relied on passages from Genesis 9:1-17, Deuteronomy 4:3-5 and 14, and Leviticus 11:44 in asserting the following:

> All meat must come from animals with a split hoof and who chew its cud such a[sic] deer, cow, sheep or goat. Fish must have had fins and scales. All dairy products must be derived from "kosher" animals. Preparation can render an otherwise "kosher" meal non-kosher if strict guidelines are not followed.
>
> They explained that they must follow all of God's laws including God's dietary laws otherwise they could not be God's chosen one. . . . In short, they entered into a personal covenant with God as in the days of Noah, in effect a contract, that they must eat meat and dairy in accordance with God's dietary laws. . . .

*Id.* The court found, however, that the noted passages did not support Plaintiff's claims:

> Plaintiffs' assertion regarding the alleged quotations from the Bible appears to be no more than an attempt to justify their desire to continue on a Kosher non-vegan diet, as it overlooks the fact that nothing in the above passage requires the consumption of dairy and meat. Rather, it merely specifies which animals and dairy may be consumed. Although Plaintiffs may prefer to eat meat and dairy as part of their Kosher diet, the facts they have alleged fail to show, or support a reasonable inference, that the consumption of meat and dairy is sufficiently significant to an adherent of the Jewish faith that being denied meat and dairy imposes a substantial burden on the adherent's ability to freely exercise his or her religion. Therefore, Plaintiffs have failed to show that their rights are being violated by the provision of a vegan diet which complies with Kosher religious tenets.

*Id.* It is this analysis that Defendants would like this Court to adopt.

As Plaintiffs properly note, this Court is not bound by an unpublished decision from the Western District of Michigan. More importantly, however, the undersigned does not agree with the *McKenzie* court's analysis. Objectively, the *McKenzie* court appears to be correct that "nothing in the [quoted] passage [appears to] require[] the consumption of dairy and meat." But whether a religious belief is entitled to protection under the First Amendment (or RLUIPA) is not an objective inquiry:

> [T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of "whether the beliefs professed . . . are

*sincerely held*," not whether "the belief is accurate or logical." *Jackson v. Mann*, 196 F.3d 316, 320 (2d. Cir. 1999) (emphasis in original) (citations and internal quotation marks omitted). And, under RLUIPA, prison officials are to focus their inquiries on "the sincerity of a prisoner's professed religiosity."

*Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005)); *see also DeHart v. Horn*, 227 F.3d 47, 50 (3rd Cir. 2000) ("We agree with [Plaintiff] that the district court could properly determine only whether he sincerely held his religious beliefs, not whether his beliefs are doctrinally correct or central to a particular school of Buddhist teaching." (citing *Employment Division v. Smith*, 494 U.S. 872, 886-87 (1990))). Thus, while Plaintiffs' beliefs may not be accurate, the undersigned finds that Defendants have provided no evidence to suggest that their beliefs are not sincerely held. Plaintiffs each verified the Complaint stating that they sincerely believe that "a fundamental commandment of their faith [is] *to eat meat* and keep kosher." (Docket no. 1 ¶ 16 (emphasis added).) They also each provided affidavits stating the same. (Docket no. 15-1 at 5, 8, and 11.) Therefore, the undersigned recommends denying Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) with regard to Plaintiff's First Amendment and RLUIPA claims.[7]

### ii. Plaintiffs' Fourteenth Amendment Claims

Plaintiffs also allege that Defendants discriminated against them in violation of the Equal Protection Clause of the Fourteenth Amendment. First, Plaintiffs assert that "unless the MDOC

---

[7]Moreover, Plaintiffs do not rely on the same Bible passage to support their claim. Plaintiffs, instead, rely on Deuteronomy 12:15-21, which Plaintiffs assert supports their belief that "the purpose of eating 'lower' lifeforms (sic) is to elevate them to holiness." (*See* docket no. 15 at 20 (citing docket no. 15-2 at 23-24 ("Only man can elect to do good; only a human being can, by the force of his or her deeds, transcend the creature state to achieve intimacy with the Devine."))). Again, for purposes of Defendants' Motion, the Court need not determine the accuracy of Plaintiffs' interpretation.

plans on implementing enforced vegetarianism on all prisoners under its jurisdiction, all prisoners **except those who are Jewish** will soon be receiving more favorable treatment." (Docket no. 1 ¶ 19.) (emphasis in original).) Plaintiffs contend that the "policy of enforced vegetarianism is targeted specifically at prisoners within the MDOC who are Jewish or claim to be as such." (*Id.* ¶ 21.) Second, Plaintiffs assert that the MDOC's failure to provide Kosher meat and dairy products in the commissary is discriminatory. (*Id.* ¶ 30-32.)

Defendants did not specifically address Plaintiffs' Fourteenth Amendment claims, proceeding (presumably) on the assumption that Plaintiffs' claims would be dismissed pursuant to *McKenzie*. Nevertheless, 28 U.S.C. § 1915A requires the court to sua sponte dismiss a civil action filed by prisoners against a governmental entity or officer or employee of a governmental entity if the court determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), or seeks monetary relief against a defendant who is immune from such relief. The undersigned has conducted such a review with regard to Plaintiffs' Fourteenth Amendment claims and recommends that the Court dismiss the claims sua sponte.

The Fourteenth Amendment "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To prevail on their claim, Plaintiffs must show (1) that they have been treated differently from persons similarly situated to them "in all material respects," and (2) that Defendants "intentionally discriminated against [them] and that their behavior was motivated by purposeful discrimination." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 836 (6th Cir.2009); *Abdullah v. Fard*, 173 F.3d 854 (6th Cir. 1999) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)). Regardless of

11

whether Plaintiffs can show that any other prisoners are similarly situated in all material respects, Plaintiffs do not allege that Defendants' implementation of the new vegan menu was "motivated by purposeful discrimination." To the contrary, Defendants appear to be attempting to accommodate Plaintiffs' religious beliefs. *Accord*, *Stornello v. Heyns*, No. 13-13674, 2013 WL 6842561, *4-5 (E.D. Mich. Dec. 27, 2013) (Michelson, M.J.) (denying a similar claim by another group of Jewish inmates and finding that "the express language of [P.D. 05.03.150] indicates that it complies with Kosher and Halal religious tenets[, which] . . . suggests an intent to accommodate Plaintiffs' religious beliefs, not to discriminate against Plaintiffs on the basis of religion or to impose a substantial burden on their religious beliefs"). Therefore, the undersigned recommends dismissing Plaintiffs' Fourteenth Amendment Claims.

### 2. Plaintiffs' Motion for TRO and/or Preliminary Injunction

Plaintiffs seek an order enjoining Defendants from enforcing "the religious diet portion of MDOC P.D. 05.03.150" and to stop Defendants from retaliating against them for filing their claims. Federal Rule of Civil Procedure Rule 65 authorizes the issuance of preliminary injunctions and temporary restraining orders. The Court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue. *First Tech. Safety Sys, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). As a preliminary matter, because the undersigned recommends dismissing Plaintiffs' Fourteenth Amendment Claims and their claims related to the MDOC's washing of trays and utensils, only Plaintiffs' Motion with regard to their First Amendment claims and their need to eat meat as part of a Kosher diet will be addressed. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues. *Id*. (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id. See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

The Court finds that Plaintiffs have not met their heavy burden of showing a strong likelihood of success on the merits. While Plaintiffs' Complaint is sufficient to survive Defendants' Motion to Dismiss, grave concerns remain regarding Plaintiffs' ability to show that their religious beliefs are sincerely held. Notably, the proof required for a plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a motion for summary judgment. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Plaintiffs' Motion relies almost entirely on the facts set forth in their Complaint, and without more, their allegations would not likely survive a motion for summary judgment. Moreover, when an inmate seeks an injunction against a state official, the court must proceed with the utmost care and acknowledge the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir.1984). Here, the undersigned finds that Plaintiffs' uncommon (if not entirely unique) understanding of the Kashrut is too conveniently in line with their distaste for what appears to be a very unappetizing menu.[8]

---

[8] In response to Defendants' Motion, Plaintiffs attached a copy of the new Vegan menu, which includes entree selections like "Seasoned Soy Crumbles," "Bean Salad w/ Onion," "Porcupine Bean Balls," a "Bean Sandwich Spread," and "Soy Cabbage Casserole." (Docket no. 15-1 at 27.) Plaintiffs also state that they provided the Court with a sample of "Smart Milk,"

Moreover, Plaintiffs' Motion states conclusively that they will suffer irreparable harm, that "[t]he balance of hardships favors the Plaintiffs" and that "[t]he public interest will be served by granting the injunction by preserving the First Amendment rights of the Plaintiffs and others similarly situated." Plaintiffs do not expand on these contentions, and they have not met their burden of showing that circumstances clearly demand a preliminary injunction.

### C. Conclusion

For the above-stated reasons, the undersigned recommends as follows:

(1) Defendants' Motion to Dismiss [14] should be granted in part and denied in part. Plaintiffs' claims related to the MDOC's washing of trays and utensils should be dismissed. Defendants' Motion should be denied with regard to Plaintiffs' remaining First Amendment and RLUIPA claims.

(2) The Court should sua sponte dismiss Plaintiffs' Fourteenth Amendment Claims under 28 U.S.C. § 1915.

(3) Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction [3] should be denied.

## III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

---

which is served with many of the Vegan Meals. (*Id.*; Docket no. 15 at 16.) Plaintiffs describe this product as "neither smart nor milk" and suggest that the Court "add water to it and try drinking it by itself, putting it over cereal for breakfast, or drinking it in their coffee." (*Id.*) While the undersigned has not had an opportunity to try the Smart Milk sample, Plaintiffs' contention is unavailing. Regardless of how unappetizing the menu may be, it does not entitle them to injunctive relief.

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 4, 2014
s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served up counsel of record and on Plaintiffs Michael Arnold, Daniel Corralez, and Eric Lahti on this date.

Dated: March 4, 2014
s/ Lisa C. Bartlett
Case Manager