UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL ARNOLD, DANIEL CORRALEZ, and ERIC LAHTI,**

        **Plaintiffs,**        **CIVIL ACTION NO. 13-CV-14137**

        vs.        **DISTRICT JUDGE LINDA V. PARKER**

        **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DANIEL H. HEYNS, MICHAEL MARTIN, and BRAD PURVIS, in their official capacities,**

        **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiffs Michael Arnold, Daniel Corralez, and Eric Lahti, currently prisoners at the Central Michigan Correctional Facility (STF) in St. Louis, Michigan, have filed this action under 42 U.S.C. § 1983 against Daniel Heyns (Director of the Michigan Department of Corrections (MDOC)), Michael Martin (Special Activities Coordinator for MDOC), and Brad Purves (Food Service Director for MDOC), in their official capacities, alleging that Defendants have violated Plaintiffs' rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA), by implementing MDOC Policy Directive (P.D.) 05.03.150, under which MDOC replaced all previously offered religious menus with a Vegan menu. (Docket no. 1.) Plaintiffs, three Orthodox Jews, seek a declaratory judgment finding that Defendants have violated the First Amendment and RLUIPA by "forcing the Plaintiffs

1

to eat a religious diet that does not comport with their beliefs.[1] (*Id.* at 14-15.) Plaintiffs do not seek monetary damages.

Before the Court is Defendants' Motion for Summary Judgment.[2] (Docket no. 18.) Plaintiffs filed a Response (docket no. 21), and Defendant filed a Reply (docket no. 23). All pretrial matters have been referred to the undersigned for consideration. (Docket no. 29.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.     Recommendation

For the reasons stated herein, the undersigned recommends granting Defendants' Motion for Summary Judgment [18]. Therefore, Plaintiff's outstanding Motions (docket nos. 22, 24, and 25) should be denied as moot, and this matter should be dismissed in its entirety.

## II.    Report

### A.    Facts

MDOC Policy Directive 05.03.150, which took effect on July 26, 2013, states in relevant part as follows:

> The Department offers a religious menu to meet the religious dietary needs of prisoners. The Department will begin offering a Vegan menu which will replace all currently approved religious menus on the following dates for the listed facilities:

---

[1] The Court has previously dismissed Plaintiffs' claims for alleged violations of the Fourteenth Amendment. (*See* docket no. 28.)

[2] Also currently pending are Plaintiffs' Motion for the Appointment of an Expert Witness (docket no. 22), Motion for Discovery (docket no. 24), and Motion for Sanctions (docket no. 25). Because the undersigned recommends granting Defendants' Motion for Summary Judgment, Plaintiffs' Motions should be denied as moot.

2

> 1. The week of September 15, 2013: . . . Central Michigan Correctional Facility.
>
> . . .
>
> The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals". The Deputy Director or designee shall determine at which facilities religious meals will be offered.

MDOC PD 05.03.150 (PP). When this vegan menu took effect, Prisoners who ate from the "main line" would continue to have a variety of foods available to them, including meat and dairy.

In their Complaint, Plaintiffs allege that "[they] are Orthodox Jews" and that "[t]heir religious beliefs do not command them to practice vegetarianism or to be a Vegan." (Docket no. 1 at 8.) Specifically, they allege that they are required to follow "the mitzvah (commandment) to eat meat and keep kosher;" that a Vegan diet is not a Kosher diet; that even if a Vegan diet could be Kosher, it "will not actually be kosher . . . because of how the MDOC washes its trays and utensils;" and that "MDOC could make Kosher meat products (and dairy products such as cheese) products (sic) available to Jewish prisoners for purchase, but is has chosen not to." (*Id.* at 10, 13.)

### B. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

3

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

4

### C. Analysis

Defendants' sole contention in their Motion for Summary Judgment is that Plaintiffs failed to exhaust their administrative remedies by following the MDOC grievance procedure. (*See* docket no. 18.) The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But "while the preferred practice is for inmates to complete the grievance process prior to the filing of an action and to attach to their complaint documentation of that fact, 'because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute.'" *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001)(citations omitted).

Plaintiffs acknowledge that they have not filed any grievances related to this matter, but they argue that their failure to do so is not fatal because their complaints were not grievable. Therefore, Plaintiffs contend, no administrative remedies were available to exhaust. (Docket no. 21.) Thus, the issue before the Court is a narrow one: if Plaintiffs' claims were grievable, the Court should grant Defendant's Motion; if Plaintiffs' claims were not grievable, the Court should deny Defendant's Motion.

In support of their argument, Plaintiffs rely on *Owens v. Keeling*, 461 F.3d 763, 769-70 (6th Cir. 2006). In *Owens*, the court reiterated that "'[s]o long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies.'" *Id.* (quoting *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)). But the Tennessee Department

5

of Corrections "ha[d] a flat rule declining jurisdiction . . . in its grievance process for grievances that are related to institutional placement and custody level, which may be appealed through other avenues outlined in the TDOC # 400 policy series, except where policy violations are alleged." *Id.* (internal citations and quotations omitted). Thus, "[b]ecause Owens's complaint relate[d] to his institutional placement and did not allege a policy violation," the court found that the issue was non-grievable. *Id.* Plaintiffs also rely on the holdings in *Figel v. Bouchard*, 89 Fed.Appx. 970 (6th Cir. Feb. 18, 2004) (holding that the plaintiff's complaints regarding heat and ventilation in his cell were non-grievable after the prison grievance coordinator "advised plaintiff that his complaints would be rejected as a "group issue," and "an unrelated grievance plaintiff filed concerning ventilation in his cell was rejected as non-grievable"); and *Mitchell v. Caruso*, No. 06-11567, 2006 WL 3825077, *2 (E.D. Mich. Dec. 26, 2006) (Tarnow, J.) (adopting Report and Recommendation of Majzoub, M.J) (holding that Plaintiff's claims were non-grievable where he challenged the constitutionality of a Director's Office Memorandum and was told after filing a grievance that his "grievance [was] rejected in accordance with PD 03.02.130 [because he could not] grieve the content of policy and procedure").

Specifically at issue in this matter is the language of MDOC Policy Directive 03.02.130(F), the same policy at issue in *Mitchell*, which reads, in relevant part, as follows:

> Two or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest. Such grievances shall be rejected by the grievance coordinator. Grievances that raise the following non-grievable issues also shall be rejected:
>
> > 1. A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the

6

> Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum".

P.D. 03.02.130(F). Plaintiffs argue that this policy created a "Kafkaesque Catch-22" because if they filed grievances, they would have been denied as non-grievable, and Plaintiffs would have "risk[ed] being placed on grievance restriction;" but if they did not filed grievances, they risked having their case dismissed by the Court for failure to exhaust. (Docket no. 21 at 7.) "Ultimately, [(Plaintiffs assert)] they came to the conclusion that under the doctrine enunciated in cases such as Owens, Figel, and Mitchell, . . . administrative remedies were simply not available to them." (*Id.* (emphasis in original).) Plaintiffs, however, misinterpret the scope of the holdings in the cases on which they rely.

In *Owens*, *Figel*, and *Mitchell*, there was either a "flat rule" against grieving the issue at hand, or the plaintiffs were specifically told that their grievances were denied or would be denied. But Plaintiffs were not told that their issues were non-grievable, and PD 03.02.130(F) is not a "flat rule" against filing grievances in a matter such as this. Instead, PD 03.02.130(F) "mirrors the requirement of section 1983 that a plaintiff's personal rights be violated and not the rights of someone else." *Melton v. Vasbinder*, No. 07–15480, 2009 WL 928861 at *3 (E.D. Mich. Mar. 30, 2009) (holding that "[t]o the extent that plaintiffs claim that the policy directives violate their rights [to acquire Islamic garments and prayer oil] under the federal constitution or RLUIPA, they raise an issue regarding the content of a policy or procedure as it was applied to them").

Here, Plaintiffs unilaterally determined that PD 03.02.130(F) would bar their grievances because, Plaintiffs assert, they are challenging the *content* of PD 05.03.150, alleging that its enactment was unconstitutional, not merely how PD 05.03.150 was applied to them. (Docket no. 21 at 7-8.) Plaintiffs' argument, however, cannot be reconciled with their contention at the dismissal

7

stage of this matter. Plaintiffs asserted, and the Court agreed, that Defendants' Motion to Dismiss should be denied primarily because "Plaintiffs each verified the Complaint stating that they sincerely believe that 'a fundamental commandment of their faith [is] *to eat meat* and keep kosher.'" (Docket no. 16 at 9-10 (quoting docket no. 1 ¶ 16 (emphasis added)).) That is, nothing in Plaintiffs' Complaint or their prior filings suggests that they are grieving the *content* of PD. 05.03.150; to the contrary, Plaintiffs specifically allege that PD 05.03.150 is unconstitutional as it violates their personal, sincerely held belief that they are required by their faith to eat meat. Thus, their claims are explicitly grievable under PD 03.02.130.

Under the circumstances in this matter, Plaintiffs were required to exhaust their administrative remedies under the PLRA. Their failure to do so is fatal. Therefore, the Court should grant Defendants' Motion for Summary Judgment.

### C. Conclusion

For the above-stated reasons, the undersigned recommends that Defendants' Motion for Summary Judgment [18] be granted. The Court should also deny Plaintiffs' outstanding Motions (docket nos. 22, 24, and 25) as moot and dismiss this matter in its entirety.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 30,2014                s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served up counsel of record and on Plaintiffs Michael Arnold, Daniel Corralez, and Eric Lahti on this date.

Dated: July 30, 2014               s/ Lisa C. Bartlett
                                   Case Manager