UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ARNOLD,

    Plaintiff,                    CIVIL ACTION NO. 13-14137

vs.                              DISTRICT JUDGE LINDA V. PARKER

                                    MAGISTRATE JUDGE MONA K. MAJZOUB

HEIDI WASHINGTON, et al.,

    Defendants.
_____/

### OPINION AND ORDER 1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT [90] AND 2) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [91]

Plaintiff Michael Arnold,[1] then a prisoner at the Central Michigan Correctional Facility (STF) in St. Louis, Michigan,[2] filed this action under 42 U.S.C. § 1983 against Daniel Heyns (Director of the Michigan Department of Corrections (MDOC)), Michael Martin (Special Activities Coordinator for MDOC), and Brad Purves (Food Service Director for MDOC), in their official capacities,[3] alleging that Defendants violated Plaintiff's rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA), by implementing MDOC Policy Directive (PD) 05.03.150, under which MDOC replaced all previously offered religious menus with a vegan

---

[1] Plaintiffs Daniel Corralez and Eric Lahti withdrew from this action on March 11, 2015. (*See* Docket no. 52.) For the sake of clarity and consistency, in this Report and Recommendation, the undersigned will refer to actions taken by all three plaintiffs, prior to the withdrawal of Mr. Corralez and Lahti, as having been taken only by the remaining plaintiff, Mr. Arnold.

[2] Plaintiff is currently housed at the Macomb Correctional Facility in New Haven, Michigan. (Docket no. 85.)

[3] Heidi Washington, the new Director of MDOC, was substituted in this action for Daniel Heyns on August 18, 2016. (Docket no. 92.)

menu. (Docket no. 1.) Plaintiff, an Orthodox Jew, seeks a declaratory judgment finding that Defendants have violated the First Amendment and RLUIPA by "forcing the Plaintiff[] to eat a religious diet that does not comport with [his] beliefs."[4] (*Id.* at 14-15.) Plaintiff does not seek monetary damages.

Before the Court are Plaintiff's Motion for Leave to File an Amended Complaint (docket no. 90, "Motion to Amend"), and Plaintiff's Motion for Reconsideration (docket no. 91) of the Court's previous denial of Plaintiff's Motion to Modify Scheduling Order.[5] Defendants filed a Response to Plaintiff's Motion to Amend (docket no. 93), and Plaintiff filed a Reply (docket no. 94). This matter has been referred to the undersigned for all pretrial matters. (Docket nos. 11, 29.) The undersigned has reviewed the pleadings and dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2).

**I.  Background**

MDOC Policy Directive 05.03.150, which took effect on July 26, 2013, states in relevant part as follows:

> The Department offers a vegan menu to meet the religious dietary needs of prisoners at the following facilities: Alger Correctional Facility, Baraga Correctional Facility, Carson City Correctional Facility, Central Michigan Correctional Facility, Chippewa Correctional Facility, Earnest C. Brooks Correctional Facility, Ionia Correctional Facility, Kinross Correctional Facility, Lakeland Correctional Facility, Macomb Correctional Facility, Muskegon Correctional Facility, Newberry Correctional Facility, Oaks Correctional Facility, Parnall Correctional Facility, St. Louis Correctional Facility, Women's Huron Valley Correctional Facility. The Vegan menu shall comply with Kosher and Halal religious tents. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious

---

[4] Plaintiff's claims for alleged violations of the Fourteenth Amendment were previously dismissed. (*See* docket no. 28 at 6-7.)

[5] Also pending is Defendants' Motion for Summary Judgment (docket no 65), which the Court will address in a separately-issued Report and Recommendation.

> dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals." The Deputy Director or designee shall determine at which facilities religious meals will be offered.

MDOC PD 05.03.150(OO).[6] When this vegan menu took effect, Prisoners who ate from the "main line" would continue to have a variety of foods available to them, including meat and dairy.

In his Complaint, Plaintiff alleges that he is an Orthodox Jew and that his "religious beliefs do not command [him] to practice vegetarianism or to be a Vegan." (Docket no. 1 at 8.) Specifically, he alleges that he is required to follow "the mitzvah (commandment) to eat meat and keep kosher;" that a Vegan diet is not a Kosher diet; that even if a Vegan diet could be Kosher, it "will not actually be kosher . . . because of how the MDOC washes its trays and utensils;" and that "MDOC could make Kosher meat products (and dairy products such as cheese) products [sic] available to Jewish prisoners for purchase, but it has chosen not to." (*Id.* at 10, 13.) Plaintiff also filed a Motion for Temporary Restraining Order or for Preliminary Injunction. (Docket no. 3.)

On December 4, 2013, Defendants filed a Motion to Dismiss. (Docket no. 14.) Plaintiff filed a Response (docket no. 15), and on March 4, 2014, the Court recommended dismissal of Plaintiff's claims with regard to MDOC's washing of trays and utensils and Plaintiff's Fourteenth Amendment Claims; the Court further recommended that Plaintiff's Motion for TRO or Preliminary Injunction be denied. (Docket no. 16.) As for Plaintiff's RLUIPA and First Amendment claims that he is required to eat meat as part of his religious beliefs, the Court

---

[6] This is the most recent version of the policy, as reflected in Exhibit A to Defendants' Motion for Summary Judgment. (Docket no. 65-2.) The prior version is included as Exhibit A to Plaintiff's Complaint. (Docket no. 1 at 18.) The prior version sets forth a schedule for the implementation of the new vegan menu, and is identified as paragraph (PP), but does not substantively differ from the current version of paragraph (OO).

recommended that these claims survive Defendants' Motion to Dismiss. (Docket no. 16 at 9-10.)

On June 24, 2014, District Judge Linda V. Parker denied Plaintiff's Motion for Preliminary Injunction and dismissed Plaintiff's Fourteenth Amendment claims but allowed all of Plaintiff's First Amendment and RLUIPA claims, that is, the meat-consumption claims as well as the claims related to the washing of trays and utensils (referred to as "cross-contamination claims"), to survive.[7] (Docket no. 28.)

Defendants filed their first Motion for Summary Judgment on March 25, 2014. (Docket no. 18.) On July 30, the Court recommended that the Motion be granted based on Plaintiff's failure to exhaust his administrative remedies. (Docket no. 31.) Plaintiff objected (docket no. 32), and Judge Parker denied the Motion based on Plaintiff's objection. (Docket no. 39.)

The parties proceeded to file a number of discovery-related motions. (*See* docket nos. 43, 44, 47, 49, 55.) Plaintiff also filed two additional motions for TROs (docket nos. 33, 53), both of which were denied (s*ee* docket nos. 52, 61). Defendants then filed a second Motion to Dismiss based on Plaintiff's refusal to participate in two scheduled depositions (docket no. 58), which Judge Parker denied in an Opinion and Order entered July 13, 2015 (docket no. 61).

---

[7] In other words, Judge Parker rejected the Court's recommendation that the cross-contamination claims be dismissed. After reviewing Plaintiff's Objection to the recommendation, Judge Parker held that:

> Plaintiffs could state a plausible claim that MDOC's washing procedures lead to violations of their rights. Notably, however, this Court does not understand Plaintiffs to be asserting separate "cross-contamination claims." Instead, Plaintiffs' complaints regarding the way MDOC's contractor washes trays and utensils are asserted in support of their First Amendment and RLUIPA claims.
>
> For these reasons, the Court rejects Magistrate Judge Majzoub's recommendation that these "claims" be dismissed.

(Docket no. 28 at 5.) The Court refers to them as "cross-contamination claims" herein because they have a different factual basis than the meat consumption claims, while acknowledging that, like the meat consumption claims, they are asserted under RLUIPA and the First Amendment.

The Court entered a Scheduling Order on August 4, 2015, setting deadlines for the filing of witness lists, discovery responses (November 20, 2015), discovery motions, and dispositive motions (December 18, 2015). (Docket no. 62). After taking Plaintiff's deposition on September 24, 2015 (s*ee* docket no. 64 at 6), Defendants filed their second Motion for Summary Judgment (docket no. 65), which the Court will address in a separately-issued Report and Recommendation.

On January 8, 2016, attorneys Patricia L. Selby and Michael J. Steinberg of the American Civil Liberties Union ("ACLU") filed appearances on behalf of Plaintiff, but they conditioned their appearances on an extension of time to conduct discovery and to properly respond to Defendants' most recent Motion for Summary Judgment.[8] (*See* docket no. 69 at 1.) Defendants opposed Plaintiff's request for an extension (docket no. 70), and the Court held a hearing on April 28, 2016. At the hearing, Ms. Selby and Mr. Steinberg indicated that, due to Plaintiff's transfer to a new facility, they would need to conduct additional discovery on the new facility. (Docket no. 75 at 2.) They requested an additional six months. (*Id.*) Counsel also indicated at that time that they were considering filing a motion to amend the Complaint to add new parties and possibly additional claims. (*Id.* at 3.) The Court granted additional time for discovery, but only until August 19, 2016 (four months rather than six). The Court specifically cautioned Plaintiff that discovery must be limited to the claims and named defendants currently included in this matter, and that discovery into additional defendants or claims would be outside the scope contemplated by the Federal Rules of Civil Procedure. (*Id.*) Plaintiff objected to the "truncated" discovery period and to the Court's limitation of discovery to the existing Defendants (docket no. 76 at 4), but Judge Parker overruled the Objection (docket no. 79.)

---

[8] Plaintiff did, however, draft his own pro se Response to Defendants' Third Motion for Summary Judgment. (Docket no. 71). Plaintiff never filed any other responses to Defendants' Motion for Summary Judgment through his counsel.

Two months later, on June 29, 2016, Plaintiff filed a Stipulation of Substitution of Counsel, indicating that Ms. Selby was terminating herself from the case and would be replaced by Mr. Daniel Manville, who runs a legal clinic at the Michigan State University College of Law. (Docket no. 84.) On July 28, 2016, Plaintiff filed a Motion to Modify the Scheduling Order, requesting yet another extension of the deadline for discovery and dispositive motions, so that Mr. Manville's students could work on the case during the normal academic school year. (Docket no. 86.) The Court denied Plaintiff's Motion to Modify the Scheduling Order on August 12, 2016. (*See* August 12, 2016, text-only order.)

On August 15, 2016, just four days before the close of the extended discovery period, Plaintiff filed the Motion to Amend which is currently before the Court. (Docket no. 90.) That same day, Plaintiff also filed the currently pending Motion for Reconsideration (docket no. 91) of the Court's denial of his Motion to Modify the Scheduling Order, in light of the newly filed Motion to Amend. Defendants filed a Response to the Motion to Amend (docket no. 93), and Plaintiff filed a Reply (docket no. 94).

**B.     Governing Law & Analysis**

    **1.     Motion to Amend**

Federal Rule of Civil Procedure 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

6

Factors relevant to the determination of whether to permit an amendment include "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." *U.S. v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) (citation omitted). "Delay alone . . . does not justify the denial of leave to amend. Rather, the party opposing a motion to amend must make some significant showing of prejudice to prevail." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995).

The United States Court of Appeals for the Sixth Circuit has explained that, in determining whether a proposed amendment would cause undue prejudice, the court should consider "whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994).

**C.    Analysis**

   **1.    Motion to Amend (docket no. 90)**

In his Motion to Amend, Plaintiff essentially seeks to convert this individual-claim case into a class action. Defendants argue that Plaintiff's request is untimely, was made in bad faith, and that to allow Plaintiff to amend his Complaint to assert class action claims at this late point in the litigation would be unduly prejudicial to Defendants. (Docket no. 93.) Defendants contend that "[i]f there was a need to make this matter a class action that was obvious when

7

[Plaintiff] filed his complaint in 2013," and that "Ms. Selby and Mr. Steinberg certainly could have raised that issue when they became counsel of record," in April of this year. (*Id.* at 7.) Defendants point out that they have already filed multiple dispositive motions, and argue that they should not be "forced to defend themselves against a class action and engage in all the discovery that accompanies a class action" nearly three years into the life of this case. (*Id.* at 7-8.)

The Court agrees that allowing Plaintiff to amend his Complaint to include class action claims at this point in the litigation would cause undue prejudice to Defendants. Plaintiff's Motion to Amend was filed nearly an entire year after the close of the original discovery period, eight months after the deadline for dispositive motions (*see* docket no. 62), and only four days before the close of the extended discovery period (*see* docket no. 75 at 3). *See Reed v. Speck*, 508 Fed. App'x 415, 422 (6th Cir. 2012) (affirming magistrate judge's denial of motion to file fourth amended complaint on the basis that "'to allow the amendment . . . after the close of both fact and expert discovery and the expiration of the deadline for filing dispositive motions would work an undue prejudice upon Defendants'"); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (stating that, "allowing amendment after the close of discovery creates significant prejudice," and citing cases).

Plaintiff argues that he was unable to pursue the case as a class action on a pro se basis, and that the Motion to Amend was filed "[w]ithin a short time after counsel Manville file [sic] his appearance." (Docket no. 94 at 3.) This statement may be true, but Plaintiff nevertheless had counsel from the ACLU for over three months before filing the Motion to Amend. Moreover, the Proposed Amended Complaint (docket no. 90-1) does not appear to reflect the fruits of any discovery Plaintiff conducted with the benefit of counsel during the extended discovery period as

8

one might expect given how close to the deadline the Motion to Amend was filed; rather, it more or less restates Plaintiffs' existing individual claims as class action claims.

Clearly, permitting Plaintiff to convert his case into a class action now would "significantly delay the resolution of [this] dispute," and very likely would require Defendants "to expend significant additional resources." *Phelps,* 30 F.3d at 662-63. At the very least, Defendants would be required to engage in *further* discovery—far beyond what was contemplated by the Order granting the first extended discovery period—respond to a motion to certify the class, and, if the motion to certify the class were granted, engage in the "inherently complex" practice of class action litigation. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) (quotation omitted). Thus, even if Plaintiff's delay in bringing the Motion to Amend after obtaining counsel is relatively brief, that does not negate the amount of prejudice Defendants would suffer due to the added complexity of converting this matter into a class action.

For these reasons, the Court will deny Plaintiff's Motion to Amend. (Docket no. 90.)

**2. Motion for Reconsideration**

As noted, Plaintiff has also filed a Motion for Reconsideration of the Court's denial of his previous Motion to Modify the Scheduling Order. (Docket no. 91.)

> Generally, . . . the Court will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonably implication. The movant must not only demonstrate a palpable defect by which the Court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3).

The only fact that has changed since Plaintiff filed his original Motion to Amend the Scheduling Order (docket no. 86), is that Plaintiff has now filed his Motion to Amend (docket

no. 90). The Court, however, will deny the Motion to Amend. Plaintiff has therefore failed to make the requisite showing for the Court to grant his Motion for Reconsideration. Plaintiff has also failed to otherwise show good cause for granting additional discovery on his existing individual claims, beyond the four month extension Plaintiff has already received.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend [90] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration [91] is **DENIED**.

## NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: December 20, 2016            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: December 20, 2016            s/ Lisa C. Bartlett
                                    Case Manager