UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ARNOLD,

    Plaintiff,                        CIVIL ACTION NO. 13-14137

vs.                                  DISTRICT JUDGE LINDA V. PARKER

                                     MAGISTRATE JUDGE MONA K. MAJZOUB

HEIDI WASHINGTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Arnold,[1] then a prisoner at the Central Michigan Correctional Facility (STF) in St. Louis, Michigan,[2] filed this action under 42 U.S.C. § 1983 against Daniel Heyns (Director of the Michigan Department of Corrections (MDOC)), Michael Martin (Special Activities Coordinator for MDOC), and Brad Purves (Food Service Director for MDOC), in their official capacities,[3] alleging that Defendants violated Plaintiff's rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA), by implementing MDOC Policy Directive (PD) 05.03.150, under which MDOC replaced all previously offered religious menus with a vegan menu. (Docket no. 1.) Plaintiff, an Orthodox Jew, seeks a declaratory judgment finding that

---

[1] Plaintiffs Daniel Corralez and Eric Lahti withdrew from this action on March 11, 2015. (*See* Docket no. 52.) For the sake of clarity and consistency, in this Report and Recommendation, the undersigned will refer to actions taken by all three plaintiffs, prior to the withdrawal of Mr. Corralez and Lahti, as having been taken only by the remaining plaintiff, Mr. Arnold.

[2] Plaintiff is currently housed at the Macomb Correctional Facility in New Haven, Michigan. (Docket no. 85.)

[3] Heidi Washington, the new Director of MDOC, was substituted in this action for Daniel Heyns on August 18, 2016. (Docket no. 92.)

Defendants have violated the First Amendment and RLUIPA by "forcing the Plaintiff[] to eat a religious diet that does not comport with [his] beliefs."[4] (*Id.* at 14-15.) Plaintiff does not seek monetary damages.

Before the court is Defendants' Motion for Summary Judgment (docket no. 65). This matter has been referred to the undersigned for all pretrial matters. (Docket nos. 11, 29.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.     Recommendation**

For the reasons discussed herein, it is recommended that Defendants' Motion for Summary Judgment (docket no. 65) be construed as a motion for partial summary judgment. The Motion should be **GRANTED**, and Plaintiff's claims relating to the consumption of meat should be **DISMISSED**.

**II.    Report**

    **A.     Background**

MDOC Policy Directive 05.03.150, which took effect on July 26, 2013, states in relevant part as follows:

> The Department offers a vegan menu to meet the religious dietary needs of prisoners at the following facilities: Alger Correctional Facility, Baraga Correctional Facility, Carson City Correctional Facility, Central Michigan Correctional Facility, Chippewa Correctional Facility, Earnest C. Brooks Correctional Facility, Ionia Correctional Facility, Kinross Correctional Facility, Lakeland Correctional Facility, Macomb Correctional Facility, Muskegon Correctional Facility, Newberry Correctional Facility, Oaks Correctional Facility, Parnall Correctional Facility, St. Louis Correctional Facility, Women's Huron Valley Correctional Facility. The Vegan menu shall comply with Kosher and Halal religious tents. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative

---

[4] The court has previously dismissed Plaintiff's claims for alleged violations of the Fourteenth Amendment. (*See* docket no. 28 at 6-7.)

>menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals." The Deputy Director or designee shall determine at which facilities religious meals will be offered.

MDOC PD 05.03.150(OO).[5] When this vegan menu took effect, Prisoners who ate from the "main line" would continue to have a variety of foods available to them, including meat and dairy.

In his Complaint, Plaintiff alleges that he is an Orthodox Jew and that his "religious beliefs do not command [him] to practice vegetarianism or to be a Vegan." (Docket no. 1 at 8.) Specifically, he alleges that he is required to follow "the mitzvah (commandment) to eat meat and keep kosher;" that a Vegan diet is not a Kosher diet; that even if a Vegan diet could be Kosher, it "will not actually be kosher . . . because of how the MDOC washes its trays and utensils;" and that "MDOC could make Kosher meat products (and dairy products such as cheese) products [sic] available to Jewish prisoners for purchase, but it has chosen not to." (*Id.* at 10, 13.) Plaintiff also filed a Motion for Temporary Restraining Order or for Preliminary Injunction. (Docket no. 3.)

On December 4, 2013, Defendants filed a Motion to Dismiss. (Docket no. 14.) Plaintiff filed a Response (docket no. 15), and on March 4, 2014, the undersigned recommended that the court dismiss Plaintiff's claims with regard to MDOC's washing of trays and utensils and Plaintiff's Fourteenth Amendment Claims; the undersigned further recommended that the court deny Plaintiffs' Motion for TRO or Preliminary Injunction. (Docket no. 16.) As for Plaintiff's

---

[5] This is the most recent version of the policy, as reflected in Exhibit A to Defendants' Motion for Summary Judgment. (Docket no. 65-2.) The prior version is included as Exhibit A to Plaintiff's Complaint. (Docket no. 1 at 18.) The prior version sets forth a schedule for the implementation of the new vegan menu, and is identified as paragraph (PP), but does not substantively differ from the current version of paragraph (OO).

3

RLUIPA and First Amendment claims that he is required to eat meat as part of his religious beliefs, the undersigned recommended that these claims survive Defendants' Motion to Dismiss. (Docket no. 16 at 9-10.)

On June 24, 2014, the court denied Plaintiff's Motion for Preliminary Injunction and dismissed Plaintiff's Fourteenth Amendment claims but allowed all of Plaintiff's First Amendment and RLUIPA claims, that is, the meat-consumption claims as well as the claims related to the washing of trays and utensils (referred to as "cross-contamination claims"), to survive.[6] (Docket no. 28.)

Defendants filed their first Motion for Summary Judgment on March 25, 2014. (Docket no. 18.) On July 30, the undersigned recommended that the Motion be granted based on Plaintiff's failure to exhaust his administrative remedies. (Docket no. 31.) Plaintiff objected to the Report and Recommendation (docket no. 32), and the court denied the Motion based on Plaintiff's objections. (Docket no. 39.)

The parties proceeded to file a number of discovery-related motions. (*See* docket nos. 43, 44, 47, 49, 55.) Plaintiff also filed two additional motions for TROs (docket nos. 33, 53), both of

---

[6] In other words, the court rejected the undersigned's recommendation that the cross-contamination claims be dismissed. The court held, after reviewing Plaintiff's Objection to the recommendation, that:

> Plaintiffs could state a plausible claim that MDOC's washing procedures lead to violations of their rights. Notably, however, this Court does not understand Plaintiffs to be asserting separate "cross-contamination claims." Instead, Plaintiffs' complaints regarding the way MDOC's contractor washes trays and utensils are asserted in support of their First Amendment and RLUIPA claims.
>
> For these reasons, the Court rejects Magistrate Judge Majzoub's recommendation that these "claims" be dismissed.

(Docket no. 28 at 5.) The undersigned refers to them as "cross-contamination claims" herein because they have a different factual basis than the meat consumption claims, while acknowledging that, like the meat consumption claims, they are asserted under RLUIPA and the First Amendment.

which were denied (s*ee* docket nos. 52, 61). Defendants then filed a second Motion to Dismiss based on Plaintiff's refusal to participate in two scheduled depositions (docket no. 58), which the court denied in an Opinion and Order entered July 13, 2015 (docket no. 61).

The undersigned entered a Scheduling Order on August 4, 2015, setting deadlines for the filing of witness lists, discovery responses (November 20, 2015), discovery motions, and dispositive motions (December 18, 2015). (Docket no. 62.) After taking Plaintiff's deposition on September 24, 2015 (s*ee* docket no. 64 at 6), Defendants filed their second Motion for Summary Judgment (docket no. 65), which is currently before the court.[7]

On January 8, 2016, attorneys Patricia L. Selby and Michael J. Steinberg of the American Civil Liberties Union filed appearances on behalf of Plaintiff, but they conditioned their appearances on an extension of time to conduct discovery and to properly respond to Defendants' most recent Motion for Summary Judgment.[8] (*See* docket no. 69 at 1.) Defendants opposed Plaintiff's request for an extension (docket no. 70), and the undersigned held a hearing on April 28, 2016. At the hearing, Ms. Selby and Mr. Steinberg indicated that, due to Plaintiff's transfer to a new facility, they would need to conduct additional discovery on the new facility. (Docket no. 75 at 2.) They requested an additional six months. (*Id.*) Counsel also indicated at that time that they were considering filing a motion to amend the Complaint to add new parties and possibly additional claims. (*Id.* at 3.) The undersigned granted additional time for discovery, but only for four months (rather than six), until August 19, 2016. The undersigned specifically cautioned Plaintiff that discovery must be limited to the claims and defendants

---

[7] Defendants sought and received permission to file this Motion, in accordance with Eastern District of Michigan Local Rule 7.1(b)(2), which requires leave of court if a party wishes to file more than one motion for summary judgment.

[8] Plaintiff did, however, draft his own pro se Response to Defendants' Third Motion for Summary Judgment. (Docket no. 71). Plaintiff never filed any other responses to Defendants' Motion for Summary Judgment through his counsel.

currently included in this matter, and that discovery into additional defendants or claims would be outside the scope contemplated by the Federal Rules of Civil Procedure. (*Id.*) The undersigned also set a deadline of September 30, 2016, for Plaintiff to respond to Defendants' Motion for Summary Judgment, and specifically noted that Plaintiff would be required to seek leave of court if he wished to file his own dispositive motion. (*Id.*)

Two months later, on June 29, 2016, Plaintiff filed a Stipulation of Substitution of Counsel, indicating that Ms. Selby was terminating herself from the case and would be replaced by Mr. Daniel Manville, who runs a legal clinic at the Michigan State University College of Law. (Docket no. 84.) On July 28, 2016, Plaintiff filed a Motion to Modify the Scheduling Order, requesting a further extension of the deadline for discovery and dispositive motions, so that Mr. Manville's students could work on the case during the normal academic school year. (Docket no. 86.) The undersigned denied Plaintiff's Motion to Modify the Scheduling Order on August 12, 2016. (*See* August 12, 2016, text-only order.)

On August 16, 2016, Plaintiff filed a Motion for Leave to File an Amended Complaint. (Docket no. 90, "Motion to Amend.") That same day, Plaintiff also filed a Motion for Reconsideration (docket no. 91) of the undersigned's denial of his Motion to Modify the Scheduling Order, in light of the newly filed Motion to Amend. Defendants filed a Response (docket no. 93) to the Motion to Amend, arguing that it is untimely, that it was filed in bad faith, and that to allow Plaintiff to file an amended complaint would cause undue prejudice to Defendants. The undersigned has denied these two motions in a separately entered Opinion and Order, leaving only Defendants' Motion for Summary Judgment (docket no. 65).

**B.  Governing Law**

    **1.  Summary Judgment Standard**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.     Analysis**

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A). An action "will be classified as a substantial burden when that action forced an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Barhite v. Caruso*, 377 Fed. App'x 508, 511 (6th Cir. 2010) (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 Fed. App'x 729, 734 (6th Cir. 2007)).

The First Amendment Free Exercise Clause, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. The protections of the Free Exercise Clause apply to prisoners; however, "prison regulations that impinge on an inmate's constitutional rights are valid if they are 'reasonably related to legitimate penological interests.'" *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). This "deferential standard" is used "in light of the 'inordinately difficult undertaking' of prison administration, which 'requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'" *Id.* (quoting *Turner*, 482 U.S. at 85). The court must consider four factors to determine whether the prison regulation is reasonable:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) whether there are alternative means of exercising the rights that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimus cost to valid penological interests.

*Id.* (quoting *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999)).

Whether a religious belief is entitled to protection under RLUIPA or the First Amendment is a subjective inquiry:

> [T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of "whether the beliefs professed . . . are *sincerely held*," not whether "the belief is accurate or logical." *Jackson v. Mann*, 196 F.3d 316, 320 (2d. Cir. 1999) (emphasis in original) (citations and internal quotation marks omitted). And, under RLUIPA, prison officials are to focus their inquiries on "the sincerity of a prisoner's professed religiosity."

*Id.* at 298 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)); *see also DeHart v. Horn*, 227 F.3d 47, 50 (3rd Cir. 2000) ("We agree with [Plaintiff] that the district court could properly determine only whether he sincerely held his religious beliefs, not whether his beliefs are doctrinally correct or central to a particular school of Buddhist teaching.").

As a preliminary matter, the undersigned notes that Plaintiff alleges Defendants have violated his rights under the RLUIPA and the First Amendment in two distinct ways: First, Plaintiff claims that pursuant to his religious beliefs, he is *required* to eat meat, which the vegan religious diet obviously does not accommodate. Second, Plaintiff contends that pursuant to his religious beliefs, he can only eat food prepared in accordance with Kosher rules and that Defendant does not ensure that the vegan religious diet is properly prepared.[9] Defendants'

---

[9] *See* discussion in note 6, above.

9

Motion for Summary Judgment does not address the cross-contamination claims, and therefore should be construed as a motion for partial summary judgment on the meat consumption claims only. (*See* docket no. 65.)[10]

As discussed above, the undersigned previously recommended denial of Defendants' Motion to Dismiss (docket no. 14) regarding Plaintiff's RLUIPA and First Amendment meat consumption claims. Defendants' argument in the Motion to Dismiss related to these claims rested on the premise that the vegan meal itself was Kosher and therefore should satisfy Plaintiff's religious beliefs as an Orthodox Jew; Defendants implicitly rejected Plaintiff's assertion that his religious beliefs require him to eat meat. (Docket no. 14.) Defendants heavily relied on a case from the Western District of Michigan, *McKenzie v. Michigan Department of Corrections*, no. 2:13-cv-291, 2013 WL 5963115 (W.D. Mich. Nov. 8, 2013), in which the court concluded that Jewish prisoners' rights were not violated by MDOC's vegan diet, reasoning that:

> Although Plaintiffs may prefer to eat meat and dairy as party of their Kosher diet, the facts they have alleged fail to show . . . that the consumption of meat and dairy is sufficiently significant to an adherent of the Jewish faith that being denied meat and dairy imposes a substantial burden on the adherent's ability to freely exercise his or her religion. Therefore, Plaintiffs have failed to show that their rights are being violated by the provision of a vegan diet which complies with Kosher religious tenets.

*Id.* at *4. The court in *McKenzie* noted that the inmates relied on passages from Genesis 9:1-17, Deuteronomy 4:3-5 and 14, and Leviticus 11:44 in asserting the following:

> All meat must come from animals with a split hoof and who chew its cud such a[s] deer, cow, sheep or goat. Fish must have had fins and scales. All dairy products must be derived from "kosher" animals. Preparation can render an otherwise "kosher" meal non-kosher if strict guidelines are not followed.
>
> They explained that they must follow all of God's laws including God's

---

[10] For example, the "concise statement of issues presented" provides: "Should this Court grant summary judgment to the Defendants because [Plaintiff] cannot demonstrate that the Defendants imposed a substantial burden on his religious exercise because his belief that he is entitled to kosher meat is insincere?" (Docket no. 65 at 4.)

10

> dietary laws otherwise they could not be God's chose one. . . . In short, they entered into a personal covenant with God as in the days of Noah, in effect a contract, that they must eat meat and dairy in accordance with God's dietary laws.

*Id.* The court found, however, that the noted passages did not support the inmates' claims:

> Plaintiffs' assertion regarding the alleged quotations from the Bible appears to be no more than an attempt to justify their desire to continue on a Kosher non-vegan diet, as it overlooks the fact that nothing in the above passage requires the consumption of dairy and meat. Rather, it merely specifies which animals and dairy may be consumed.

*Id.*

The undersigned rejected Defendants' reliance on *McKenzie*, finding that "whether a religious belief is entitled to protection under the First Amendment (or RLUIPA) is not an objective inquiry," but rather turns on whether Plaintiff's beliefs are sincere, and further finding that "Defendants have provided no evidence to suggest that [Plaintiff's] beliefs are not sincerely held." (Docket no. 16 at 8-10.) The undersigned noted that Plaintiff verified the Complaint stating that he sincerely believes that "a fundamental commandment of [his] faith [is] to *eat meat* and keep kosher," and that he provided an affidavit stating the same. (*See id.* (citing docket nos. 1, 15-1).)

Since that time, however, the United States Court of Appeals for the Sixth Circuit has affirmed the district court's decision in *McKenzie*. *See McKenzie v. MDOC*, No. 14-1112, docket no. 14-1 (6th Cir. July 15, 2015).[11] The panel concluded:

> The district court . . . did not err in dismissing the plaintiffs' claims . . ., because the facts alleged in the complaint did not show that a Kosher vegan diet would substantially burden their ability to practice their Jewish faith. As the district court noted, the scripture cited by the plaintiffs as supporting their sincerely held religious beliefs does not require the consumption of meat and dairy products, but, instead, specifies that any such products, if consumed, must comply with God's dietary laws. Thus, the plaintiffs failed to sufficiently allege that restricting them to a vegan diet substantially burdens or interferes with their sincerely held religious beliefs.

---

[11] Neither party discusses the fact that the Sixth Circuit affirmed the decision in *McKenzie*.

*Id.* at 3.

Plaintiff relies on a different Bible passage than the plaintiffs in *McKenzie*. (*See* Docket no. 15 at 20.) Based on this Court's review of the pleadings, the only place in the record where Plaintiff's verses appear is in an article attached as exhibit Q to Plaintiff's Response to Defendants' original Motion to Dismiss. (Docket no. 15-2 at 18-21.) It is difficult to discern from the article which language constitutes the actual verses; nevertheless, the undersigned has reviewed the article, and finds that the passages discussed therein do not compel the eating of meat any more than the passages relied upon by the plaintiffs in *McKenzie*. (Docket no. 15-2 at 18-21.) For example, the article discusses such language as, "you *may* slaughter and eat [flesh]," and "however you *may* slaughter and eat meat as per every desire of your soul" (docket no. 15-2 at 19 (emphasis added)), but it does not say that meat is required. Plaintiff does not cite to any specific language which suggests otherwise.

Moreover, in their currently pending Motion for Summary Judgment (docket no. 65) Defendants attach an affidavit from Mr. David Leach, the current MDOC Special Activities Coordinator, who swears that, based on personal knowledge and information provided by the Chaplains' Advisory Council, "meat is not required to be consumed to meet Kosher dietary restrictions of the Orthodox Jewish faith and it is entirely consistent with Kosher dietary restrictions to consume a vegan diet." (Docket no. 65-6 at 4.) In his Response to Defendants' Motion, Plaintiff contends that the Leach affidavit is inadequate to show that there are no genuinely disputed facts concerning the sincerity of Plaintiff's belief that he is required to eat meat. Plaintiff does not, however, offer any further proof to support his claim that his personal belief is sincere.

In light of the Sixth Circuit's decision in the *McKenzie* case, the similar inadequacy of the

12

Bible verses on which Plaintiff relies, and the Leach affidavit, the undersigned concludes that Defendants are entitled to summary judgment on Plaintiff's meat consumption claims under both RLUIPA and the First Amendment.

### D.  Conclusion

For the reasons discussed herein, it is recommended that Defendants' Motion for Summary Judgment (docket no. 65) be construed as a motion for partial summary judgment. The Motion should be **GRANTED**, and Plaintiff's claims relating to the consumption of meat should be **DISMISSED**.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Eastern District of Michigan Local Rule 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise

response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: December 21, 2016         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: December 21, 2016         s/ Lisa C. Bartlett
                                 Case Manager