UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERLAD ACKERMAN and
MARK SHAYKIN,

                Plaintiffs,                        Civil Case No. 13-14137
                                                  Honorable Linda V. Parker

v.

HEIDI WASHINGTON,

                Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT

### Background

Plaintiffs, two Michigan Department of Corrections inmates, filed this class action lawsuit alleging that the food they are served violates their religious beliefs and thus their rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiffs seek injunctive relief, only. They are Orthodox Jews who maintain a kosher diet based on their religious beliefs.

In 2013, MDOC decided to substitute vegan meals for the various religious diets provided to inmates. Vegan meals contain no meat or dairy items. Plaintiffs allege that the vegan meals are not kosher due to how they are prepared and served, which causes cross-contamination from non-kosher foods. Plaintiffs also

allege that the vegan diet violates their religious belief that they must consume meat and dairy on the Sabbath and certain Jewish religious holidays (i.e., Rosh Hashanah, Yom Kippur, Sukkot, and Shavuot).

The Court has certified a Class comprised of all current and future MDOC prisoners who (a) request, in writing, a religious diet (kosher meals); and (b) either (i) were, as of September 1, 2019, designated or identified in Defendant's records as being Jewish, or (ii) enter Defendant's custody for the first time after September 1, 2019, and designate or identify themselves as being Jewish upon admission to Defendant's custody.  The Class was certified pursuant to Federal Rule of Civil Procedure 23(b)(2).  Therefore, notification of class certification was not mandatory and there is no automatic right to opt out of the Class. *See* Fed. R. Civ. P. 23(c)(2)(A); *Coleman v. GM Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002) (explaining that the procedural protections of notice and opportunity to opt out of the class action are unnecessary in a Rule 23(b)(2) class action because "its requirements are designed to permit only classes with homogenous interests").

The parties have agreed to settle Plaintiffs' "cross-contamination" claim. (*See* Settlement Agreement, ECF No. 213.)  On October 15, 2019, the Court preliminarily approved the settlement agreement, the parties' proposed notice plan,

and proposed notice.[1]  (ECF No. 216.)  Putative class members were required to file objections to the proposed settlement within thirty days of its posting (which MDOC was required to complete within seven days of the Court's preliminary approval order).  Several prisoners and a congregation submitted letters or "objections" to the settlement agreement.  (ECF Nos. 218, 220-31.)  Those submissions are discussed later in this decision.  On December 8, 2019, Plaintiffs filed a motion seeking final approval of the settlement and the Court held a fairness hearing on December 11, 2019.  (ECF No. 232.)

At the fairness hearing, the Court raised two issues concerning the settlement agreement's terms:

> (1) How class members demonstrate that they have been "living kosher" before being eligible for kosher meals; and

> (2) How MDOC will treat class members previously approved to receive a kosher diet but who were removed from the vegan menu because they consumed non-vegan items or removed themselves from the vegan diet because they deemed the vegan menu as non-kosher.

The Court received supplemental briefing from the parties on these issues.  (ECF No. 236, 238.)  As the Court stated at the fairness hearing, it finds the parties'

---

[1] While notice of class certification under Federal Rule of Civil Procedure 23(b)(2) is not required, the rule requires notice of a settlement of any form of class action. *See* Fed. R. Civ. P. 23(e).

3

settlement agreement fair, reasonable, and adequate.  The Court, therefore, is

granting Plaintiffs' motion for final approval of the agreement.

## Terms of the Settlement

Pursuant to the settlement agreement, Class members are entitled to kosher

meals if they are found to hold a religious belief requiring them to eat kosher.  The

agreement provides the following mechanism for assessing an inmate's religious

beliefs:

> 4.    If a class member was approved by Defendant for a
> religious (Vegan) diet as of September 1, 2019, it shall be
> presumed that the class member's sincerely held religious belief
> requires the class member to eat Kosher, and these class
> members shall be immediately approved for Kosher meals.
>
> 5.    For class members other than those who were approved
> by Defendant for a religious diet as of September 1, 2019, class
> members shall be eligible for Kosher meals if they live Kosher
> for at least 60 days prior to requesting the religious diet or have
> done so for 60 days prior to the effective date of this Settlement
> Agreement.

(ECF No. 213 at Pg ID 2178.)  The agreement provides that MDOC may obtain

information through its chaplains to confirm a prisoner's sincerely held religious

beliefs.  (*Id.* ¶ 6.)

As indicated above, the Court asked at the fairness hearing how a Class

member can "live kosher" pending their approval for the kosher diet when, during

the pendency, they would be required to eat from the non-kosher diet line.  MDOC

filed a supplemental brief on December 27, 2019, detailing its process for

4

approving an inmate for a religious diet, generally, and a kosher diet, specifically. (ECF No. 236.)  The Court is satisfied that this process is fair.

MDOC did not supplement its briefing to address the second concern raised at the hearing.  *See supra* at 3.  Plaintiffs filed a supplemental brief in which they indicate that prisoners removed from the vegan menu were removed for thirty days or up to one year.  (ECF No. 238.)  Plaintiffs argue that requiring those inmates to complete the imposed restriction and then wait an additional sixty days to show that they "live kosher" places a substantial burden on their religious beliefs and therefore violates RLUIPA.  The Court agrees, particularly as MDOC previously approved these inmates for a kosher diet but then provided a vegan diet which in fact was not kosher.  Moreover, according to the plain language of the agreement, if MDOC approved these inmates for a religious (vegan) diet prior to September 1, 2019, it is presumed that their religious beliefs require them to eat kosher and they are to be "immediately approved for Kosher meals."

MDOC agrees in the proposed settlement agreement to provide two (2) Certified kosher meals per day (lunch and dinner, at the appropriate times) from a Certified kosher source.  The source will be either an outside vendor or an MDOC certified kosher kitchen.  The meals will be sealed and with reliable markings indicating their kosher certification.

If MDOC decides to produce kosher meals in its own kitchen, such kitchen must be certified kosher.  MDOC must then notify Plaintiffs' counsel and allow Plaintiffs' counsel twenty-one (21) days to have an expert inspect the kitchen.  If Plaintiffs' counsel does not agree after inspection that the kitchen is operating in a certified kosher manner, Plaintiffs may move the Court to enforce the settlement agreement.

According to the agreement, MDOC also will provide a cold kosher breakfast, which may include kosher certified bread, fresh fruits and vegetables, kosher certified hard-boiled eggs, and kosher peanut butter.  Cooked foods only will be provided if cooked in a kosher certified kitchen.  Class members must attend the relevant meal to receive the kosher meals.

The proposed settlement agreement provides that a prisoner on the new certified kosher diet will be removed from the diet pursuant to Policy Directive 05.03.150 ¶ SS if they are found to have possessed, purchased, received, or consumed (including in the visiting room) non-kosher items.

MDOC is required to implement the terms of the settlement agreement within thirty (30) days of the Court's final approval.  The agreement indicates that the parties disagree on the amount of costs and attorney fees due to Plaintiffs' counsel for work on this litigation.  They agree to use the magistrate judge to mediate a mutual agreement as to those fees and costs.  If mediation is

unsuccessful, the agreement provides that Plaintiffs will have thirty (30) days from a date identified by the magistrate judge to file a motion for attorneys' fees and costs.

## Legal Standard for Final Approval of Settlement

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the procedures for the settlement of class actions.  Pursuant to the rule, the court's role is to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, the court considers " 'whether the interests of the class as a whole are better served if the litigation is settled rather than pursued.' "  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (quoting *Manual for Complex Litigation (Third)*, § 30.42 at 238 (1995)).  As one judge in this District has observed:

> "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." ' *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) (quoting *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985)). An appropriate range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Under this standard, "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *In re*

> *Corrugated Container Antitrust Litig. (II)*, 659 F.2d
> 1322, 1325 (5th Cir. 1981).

*Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21 (E.D.

Mich. July 13, 2006), aff'd sub nom. *UAW v. Gen. Motors Corp.*, 497 F.3d 615

(6th Cir. 2007).

Courts in the Sixth Circuit find eight factors relevant in considering whether

a class action settlement is fair, adequate, and reasonable:

> "(1) the risk of fraud or collusion; (2) the complexity,
> expense and likely duration of the litigation; (3) the
> amount of discovery engaged in by the parties; (4) the
> likelihood of success on the merits; (5) the opinions of
> class counsel and class representatives; (6) the reaction of
> absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v.*

*Gen. Motors Corp.*, 497 F.3d at 631).  "The district court enjoys wide discretion in

assessing the weight and applicability of these factors."  *Granada Investments, Inc.*

*v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *see also Ford Motor Co.*,

2006 WL 891151, at *14 ("The court may choose to consider only those factors

that are relevant to the settlement at hand and may weigh particular factors

according to the demands of the case.").

**Application**

**Fraud or Collusion**

"[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Sheick v. Auto. Component Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Here, there is no evidence to the contrary.

### 2.  Complexity, Expense, and Likely Duration of the Litigation

This is one of the oldest cases on the Court's docket.  It has presented many complicated issues, several of which remained to be resolved if the matter had to be tried.  Under that scenario, it is likely that the matter would not have been resolved for some time.  Moreover, if the case proceeded to trial, it is likely that the losing party would appeal.  During this period, class members would continue receiving non-kosher food, which they would be required to eat (unless they starve) in violation of their religious beliefs.

The settlement provides an immediate, significant, and certain recovery for Class members.  This factor favors the Court's approval of the settlement.

### 3.  Discovery

The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and

weaknesses of the claims and the adequacy of the settlement.  *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). "[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions."  *Scheick*, 2010 WL 4136958, at *19 n.3 (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table.")). At the time of the settlement in this case, the parties had completed discovery.  In fact, after Plaintiffs obtained counsel (which notably was well into the proceedings), the Court reopened discovery and granted several extensions of time to allow Plaintiffs' attorneys the opportunity to conduct the discovery they believed was needed.

This factor also favors the Court's approval.

### 4. Likelihood of Success on the Merits

When considering this factor, the court balances the plaintiff's likelihood of success on the merits against the relief offered in the settlement.  *Gen. Motors Corp.*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("[W]e cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.' ")).  "The determination of a reasonable settlement 'is not susceptible to a mathematical equation yielding a

particularized sum,' but turns on whether the settlement falls within a range of reasonableness." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012); *see also Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio 1982) (courts consider "the range of reasonableness of the settlement fund in light of the best possible recovery.").

Here, any prediction of success is far from reliable.  Nevertheless, even if Plaintiffs clearly would have prevailed at trial, the settlement accomplishes what they wanted with respect to the cross-contamination claim.  For these reasons, this factor favors approval of the settlement.

### 5.  Opinion of Class Counsel

As to the fifth factor, courts recognize that the opinion of experienced, informed, and competent counsel in favor of settlement should be afforded substantial consideration.  *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *IUECWA*, 238 F.R.D. at 597 ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.' ").  Plaintiffs' attorney, Daniel Manville, has extensive experience handling prisoner civil rights matters.  Mr. Manville and his law school clinic students demonstrated their understanding of the strengths and weakness of the claims in deciding to agree to the terms of the settlement.

11

This factor therefore also favors approval of the settlement.

### 6.  Reaction of Absent Class Members

"A certain number of . . . .objections are to be expected in a class action." *In re Cardizem*, 218 F.R.D. at 527.  "Although the Court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair." *In re Telectronics*, 137 F. Supp. 2d at 1018.  The adequacy and reasonableness of the settlement is evidenced here by the fact that few objections were received, and most of the objections did not in fact relate to the cross-contamination claim being settled but the meat and dairy claim that proceeded to trial.

With respect to the objections that addressed the cross-contamination claim, three were sent by individuals or entities without standing to object (i.e., non-Jewish MDOC prisoners and an outside Jewish group).  (*See* ECF Nos. 225, 229, 231.)  One Jewish prisoner, Daniel Horacek, wrote to state that he wishes to "withdraw" from the Class, which as indicated is not an option.  (ECF Nos. 222, 230.)  Mr. Horacek also identified elements of the agreement to which he objects and finds deficient.

Only three of Mr. Horacek's objections relate to the settlement of Plaintiffs' cross-contamination claims.  First, Mr. Horacek points out that the agreement fails to identify the type of kosher certification required; and, he argues, only one

12

certification will protect all Class members.  Defense counsel assured the Court at the fairness hearing that MDOC will provide pre-packaged food items bearing a certification that is generally accepted by Orthodox Jewish rabbis.  This falls within an appropriate range of reasonableness.

Next, Mr. Horacek notes that the settlement agreement fails to state whether the pre-packaged foods MDOC is agreeing to provide will need to be cooked or reheated.  Jewish law prohibits the reheating of food during the Sabbath.  Defense counsel represented at the fairness hearing that the meals will not require heating or cooking.  Lastly, Mr. Horacek expresses the concern raised by the Court at the fairness hearing regarding prisoners previously approved for the religious diet, who were removed or self-removed.

Objections pertaining to the settlement of the cross-contamination claim also were received from Edward Donald Burley.  (ECF Nos. 224, 226.)  Mr. Burley objects to the settlement agreement because it lacks an anti-retaliation clause and because he thinks it is overly strict.  Mr. Burley interprets the agreement as allowing MDOC to remove a Class member from the kosher diet based on one instance of receiving non-kosher food items.

Plaintiffs have informed the Court that they did not seek to include an anti-retaliation clause because they have not experienced retaliation for pursuing this litigation.  Moreover, 42 U.S.C. § 1983 already provides a recourse for prisoners

13

who experience retaliation in response to the exercise of their federal statutory or constitutional rights.  Contrary to Mr. Burley's understanding, the settlement agreement does not contain a "one-strike" provision, allowing MDOC to remove an inmate from the kosher diet the first time the inmate receives non-Kosher food items.  Instead, the agreement incorporates the protections afforded to all inmates under MDOC Policy Directive 05.03.150.  (*See* Settlement Agreement ¶ 10, ECF No. 213 at Pg ID 2179.)

For these reasons, the objections fail to convince the Court that the settlement should not be approved.  Thus, this factor weighs in favor of approving the settlement.

### 7.  The Public Interest

The public interest is served by the resolution of this matter, as the public has an interest in guaranteeing that individual's First Amendment and federal statutory rights are protected.  This factor weighs in favor of approval as well.

### 8.  Notice

The method, form, and content of the Class Notice satisfied the notice requirement of Rule 23.  In accordance with the Court's order, notice was provided to Class members in the most practical way: posting at each prison facility.  The Notice informed class members of the nature of the pending action, the general

terms of the settlement, how to submit objections to the agreement, and how to contact Plaintiffs' counsel for more information.

## Conclusion

The above factors lead this Court to conclude that the Settlement Agreement is fair, reasonable, and adequate and entitled to final approval.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Approve Consent Judgment (ECF No. 232) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 29, 2020

15