UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION,

GERALD ACKERMAN and
MARK SHAYKIN,

    Plaintiffs,

-v-                                        Case No. 13-14137
                                         Hon. LINDA V. PARKER

HEIDI WASHINGON, Director,
Michigan Department of Corrections,

    Defendant.
_____/

**MOTION TO STRIKE AFFIDAVIT OF
KEVIN WEISSENBORN (ECF No. 267-1)
AND
BRIEF IN SUPPORT**

    Plaintiffs, by Counsel Daniel E. Manville, requests that this Court grant this motion and strike the affidavit of Kevin J. Weissenborn (ECF No. 267-1), for the following reasons:

1. Pursuant to the L.C. Rule 7.1, Plaintiffs sought concurrence in this motion, and it was denied.

**Personal Knowledge Requirements**

2. Pursuant to Fed.R.Evid. 602, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness

1

has personal knowledge of the matter." [1] Courts have held that "affidavits submitted in support of, or in opposition to, motions … [must] include facts based on personal knowledge, and that personal knowledge must be evident from the affidavit, …" *Johnson v. Washington Cnty. Career Ctr.*, 982 F.Supp.2d 779, 787 (S.D. Ohio 2013) (internal quotation marks omitted); *see also Alpert v. United States*, 481 F.3d 404, 408 (6th Cir. 2007), where the Court held that an affidavit "based solely upon information that he [the affidant] received from elsewhere" was "inadmissible hearsay" and could not support a summary judgment motion). This rule of law applies to the motion to stay.

3. A court, in determining whether an affidavit is admissible, must determine whether the witness' statement is made on the basis of personal knowledge, FRE 602, that is each statement contain the foundation to support that statement. In *Brandenburg v. Cousin Vinny's Pizza, LLC,* defendants sought to strike the affidavit of the plaintiff, but the court found that the information in the paragraphs of the affidavit provided a sufficient foundation.

---

[1] An affidavit may also be stricken because it is based on hearsay. FRE 802. *See* discussion, *infra*.

> Defendants' argument is not persuasive. If Brandenburg had stated "it was my understanding," with no further context, then the Court would strike those portions of his affidavit as lacking personal knowledge. Yet, Brandenburg, in his declaration, went well beyond that simple phrase and provided reasons as to why his understanding was both well-informed and reasonable. For instance, Brandenburg avers that "it was my understanding that all delivery drivers who worked for Cousin Vinny's Pizza were paid minimum wage minus a tip credit." Doc. #5-1, ¶ 13, PAGEID #83. In the next paragraph, he states that he "was told by three managers ... that delivery drivers are hired on at $5.00 per hour. The managers told me this information because they wanted me to talk to other people who might be interested in working as delivery drivers, so that I could explain to those people the terms of employment." *Id.*, ¶ 14. From the additional details provided, the Court may reasonably infer that the statements in his declaration were sufficiently based on personal knowledge to satisfy Federal Rule of Evidence 602, and they will not be stricken

3:16-CV-516, 2017 WL 3500411, at *3 (S.D. Ohio Aug. 15, 2017), *see* attached Exhibit 1.

4. A review of the affidavit of Weissenborn shows that it lacks details that would support a finding that these paragraphs could reasonably be inferred were based on personal knowledge to satisfy FRE 602. Therefore, Weissenborn's affidavit should be stricken.

5. A review of Weissenborn's affidavit shows that paragraphs 7, 8, 9, 10, and 11 references Kosher's food from outside sources.[2] *See* attached

---

[2] The testimony of Affiant Weissenborn is found starting at page 105 of the Evidentiary Hearing Transcript. No reference of obtaining kosher food for Passover can be found in his testimony.

3

Exhibit 2. There is nothing in these paragraphs stating where this information was obtained. The affidavit does say that it is based on "personal knowledge." There is no mention in the affadvit that Weissenborn has any special knowledge as to Kosher meals. There are no facts showing where that personal knowledge came from.

6. This Court does not know whether an MDOC's litigation staff created this affidavit and placed that information there for the affiant to sign without providing where that information came from; whether the affiant read about these issues on the internet or a newspaper and wrote this affidavit; or whether he actually talked to Kosher meat dealers and this is where he got this information. These paragraphs state in a conclusory fashion what someone, likely from MDCO, thought was best to say in an affidavit to obtain a stay. *See* Fed.R.Civ.P. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

7. In paragraph 7, the affiant claims that "during normal situations, demand reduce supply to the point that orders cannot be fulfilled." What is meant by "normal situations" is not explained? Many would say this is not a normal situation. Further, many stores knowing that

4

Passover was approaching would naturally increase their normal stock so that the store does not run out of items to sale. There is nothing to support this conclusory statement that that "during normal situations, demand reduce supply to the point that orders cannot be fulfilled." There is no offer of evidence that the COVID-19 has caused a run on Kosher's package meat products. Even if there was such evidence, the COVID-19 is not a "normal situations."

8. A review of paragraph 8, that "[a]ll orders for meat prior to Passover require orders well in advance of Passover occurring." What is meant by "well in advance of Passover occurring" is not explained? Does this mean seven, thirty or 180 days in advance? From the date of the issuance by this Court of the *Bench Opinion* on January 30, 2020 (ECF No. 243) to the start of Passover on April 8, 2020, MDOC had sixty-eight days to order Kosher meat. There is no explanation in Weissenborn's affidavit why MDOC did not order Kosher meat during any of those 68 days.[3] There is no mention that MDOC even thought about ordering Kosher meat to provide on Passover or on the Sabbaths in March and

---

[3] If one only considers the time period between the *Judgment* entry on February 27, 2020 (ECF No. 251) and Passover starting on April 8, 2020, MDOC had forty-one days to order Kosher meat. There is no explanation in the affidavit that MDOC had actually sought to order such and they could not order the meat based on what is claimed by the affiant.

5

April. One can safety assume that Kosher stores would have naturally increased the normal everyday ordering of kosher food because of the approach of Passover. One can safety assumed that once it was determined that COVID-19 was impacting on Michigan that these Kosher stores ordered more kosher items due to the spacing of people issue.

9. A review of paragraph 9, it states that "[g]iven the very fluid situation with COVID-19, which have included 'Stay Home Orders' and a number of other orders and restrictions, food suppliers are experiencing unprecedented supply and distribution challenges." The main problem with this paragraph is that essential employees of the MDOC were allowed to come to the office or work at home. For a Food Service Director there is no explanation why he could not have contacted Kosher meat providers either from his office or home to determine what is or is not available and have reported such contacts in this affidavit. It is a well-known that if you don't feed prisoners, you are likely to have strikes or riots. Therefore, Weissenborn would be considered an essential employee.

10. Further in paragraph 9, the affidavit states that "food suppliers are experiencing unprecedented supply and distribution challenges."

6

Plaintiffs' counsel will concede that at the beginning of the stay at home orders there were some delays in providing supplies to grocery stores. After a few days, if not a week, most stores were advertising that most of their shelves were being restocked with no shortage, except for toilet papers and disinfectant. As to distribution, MDOC has a fleet of vans, some trucks and buses that could have been used to pick-up the meats if it had been ordered. Defendant has not shown that there was any attempt to order Kosher meats and to have it delivered or picked up by its staff.

11. In paragraph 10, it states "[t]pically, the supply of Kosher meats would resume to normal levels within 1-2 weeks after Passover." If there was never a shortage of kosher meats in the first place, which has not been demonstrated by the Affiant, there is no concern with the supply returning to normal levels. As stated above, Defendant has failed to provide evidence that there was, or is, a shortage of kosher meats. We can assume that based on Weissenborn's affidavit and his failure to mention that MDOC had actually sought to obtain kosher meat, there was no attempt to implement this Court's *Bench Opinion* or *Judgment*.

12. In paragraph 11, it states "[h]owever, given the current situation, I am advised that we can expect supply issues for 6-8 weeks or more." Once

7

again there is no reference to where this claim came from. Defendant is asking for a 60-days delay in providing kosher meat and there is an affidavit saying it will take 6-8 weeks or more to get that meat.  How coincidental is that affidavit? It makes no sense that the Jewish stores would not order at least the same level of food as last year for Passover, if not more, especially when knowing that there would be restriction on social gathering.

13. There are readily available ways to obtain kosher meat for the 56 days that this Court has order that it be provided.[4]  The ordering of kosher meat can be done through the internet or calling of kosher caterers or kosher grocery stores.[5] That food can then be delivered to the prison in the same manner as all other supplies. Or, if needed, one staff could stop at the place where the kosher meat was ordered from and then deliver it when arriving at work.  Defendant has failed to show that the obtaining of kosher meat would impose a significant negative impact on the running of Macomb Prison.  Defendant stipulated that Macomb

---

[4] Feed Service Director Weissenborn testified at the Evidentiary Hearing that MDOC has cartoon of milks readily available for Jewish prisoners to receive during regular meals. This means that there is no requirement to purchase milk for these 56 days.
[5] An internet search will show that there are many kosher food organizations within the Macomb and Wayne Counties that could be contacted, and kosher meat obtained through.

8

Prison would be the bell-weather of all the other prisons providing a Kosher menu.

14. In paragraph 12, it states "[t]his is truer for prepackaged or sealed food items." There is no mention in the affidavit where this information came from. It seems Weissenborn is a reader of Tarot cards and a predicter of the future. This is not what an affidavit is made of. Where is the factual support for this statement?

15. In the affidavit, Affiant does not claim that he reviewed any records that these statements were based upon such review. *See Washington Central Railroad Co. v. National Mediation Board,* 830 F.Supp. 1343, 1353 (E.D.Wash.1993) (personal knowledge can be established by referring review of records which statement are based on).

**Hearsay Requirement of FRE 602**

16. Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Hearsay is inadmissible unless it qualifies under a variety of exceptions to the general rule. *Fed. R. Ev.* 802–04. There exist no hearsay exceptions that would allow the statements by Weissenborn to be found as admissible.

17. "A court may therefore strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. Am. Cyanamid Co.*, 172 F.3d 193, 198 (2d Cir. 1999); *see also J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits.").

**Other Issues**

18. Defendant has not provided kosher meals to the Jewish prisoners for at least thirteen years and now she wants to again deny these religious prisoners what they believe their religion requires and what this Court has ordered. Even with the Defendant agreeing in a settlement to provide two pre-packaged kosher meals per day and ordered to provide meat and dairy, they not only seek to disobey what this Court has ordered but have actually disobeyed this Court's *Bench Opinion* and *Judgment*.

19. Defendant obtained the service of a conservative Rabbi to Kosherize the prison Vegan kitchens even after Defendant's counsel Mertens told this Court that MDOC intended to provide two prepackaged kosher

10

meals.[6] One would assume that once the MDOC had decided not to provide such prepackaged kosher meals that he would have informed this Court of that change. Plaintiffs' counsel did not receive anything saying MDOC had changed how it would comply with the Court's ruling. Therefore, I have to assume that this Court was not informed either.

20. This flaunting of the laws by the Defendant and her staff must cease **NOW**.

WHEREFORE, this Court should grant this motion for the reasons stated above.

Respectfully submitted,

/s/ Daniel E. Manville
Daniel Manville (P39731)
Substitute Counsel for Plaintiff
Director, Civil Rights Clinic
MI. State University College of Law
PO Box 1570
East Lansing, Michigan 48826
(517) 432-6866
daniel.manville@law.msu.edu

---

[6] Plaintiffs filed a motion to enforce the settlement agreement based on this bait and switch engaged in by Defendant (ECF No. 249). The response and a reply have been filed so this motion is ready for resolution by this Court.

11

## PROOF OF SERVICE

I, Daniel E. Manville certify, under penalty of perjury, that on March 30, 2020, I caused a copy of the above document to be served by the ECF system on Defendants' counsel.

                                      /s/ Daniel E. Manville
                                        Daniel E. Manville