UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD ACKERMAN and
MARK SHAYKIN,

      Plaintiffs,

v.

      Civil Case No. 13-14137
      Honorable Linda V. Parker

HEIDI WASHINGTON,

      Defendant.
_____/

## **OPINION AND ORDER DENYING PLAINTIFFS' MOTIONS**

In this class action lawsuit, prisoners approved for a religious (kosher) diet claimed that their federal rights were violated by the Michigan Department of Corrections' provision of a one-size fits all vegan diet. The matter is again before the Court on several post-judgment motions filed by Plaintiffs. Two of the motions are filed pro se by members of the Class (ECF Nos. 299, 309), even though they are represented by counsel. As this is improper, *see In re Pertuset*, 492 B.R. 232, 246 (S.D. Ohio. 2012) (citing cases interpreting 28 U.S.C. § 1654), the Court is striking those motions. Class counsel did file two motions: (i) "Plaintiff[s'] Motion for an Order Finding that Defendant's Certification of Prison Kitchens is not in Compliance with the Settlement Agreement and Judgment that these Kitchens are to be Certified Kosher Kitchens" (ECF No. 297) and (ii)

"Motion to Engage in Discovery in Support of Motion to Enforce Settlement Agreement" (ECF No. 298). The motions have been fully briefed. (ECF Nos. 302, 304, 307, 308.)

Plaintiffs' motions arise from the parties' settlement agreement, which provides in relevant part:

> 14. If Defendant provides Kosher meals produced inside Defendant's facilities, such meals shall be produced inside a Certified Kosher kitchen. Once a facility kitchen is Certified Kosher, Defendant will provide written notice to Plaintiffs' counsel. Plaintiffs' counsel and their expert(s) will have 21 days from the date of receiving the written notice to inspect the Certified Kosher kitchen. If, after inspection, Plaintiffs' counsel does not agree that a kitchen is operating in a Certified Kosher manner, Plaintiffs may move this Court to enforce this Agreement.

(ECF No. 213 at Pg ID 2179-80.) In February 2020, the kitchens of several MDOC facilities were certified kosher through Kosher Michigan, LLC, and Defendant notified Plaintiffs' counsel of the certifications. (*See* ECF No. 297-3 at Pg ID 3170-74; ECF No. 297-7 at Pg ID 3185.) Plaintiffs assert that Defendant breached the terms of the parties' settlement agreement by not obtaining an Orthodox Jewish agency to certify the kitchens, which would have mandated certain requirements not currently followed in the kitchens (e.g., the necessary

involvement of Jewish individuals in the preparation of the food).[1] Plaintiffs maintain that because the kitchens were not properly certified in the first instance, there was no reason for their counsel and/or expert to inspect the kitchens in accordance with the process contemplated in the settlement agreement.[2]

Plaintiffs also seek discovery to assess the adequacy of Kosher Michigan's certification. (ECF No. 298.) For example, Plaintiffs want to find out how long Kosher Michigan's rabbi spent inspecting the kitchens, the equipment the rabbi used to kosherize the kitchens, and who was present. (*Id*. at Pg ID 3189-90.)

This is the second time Plaintiffs have asked the Court to find that the certifications violated the settlement agreement because they were performed by a Conservative rather than an Orthodox Jewish rabbi. On February 25, 2020, Plaintiffs filed a motion to enforce the settlement agreement contending that Defendant had obtained "illegitimate" kosher certifications of the prison kitchens.

---

[1] In their reply brief, Plaintiffs raise two concerns regarding the kosherization of the kitchens at the Ionia (ICF) and Carson City (CRF) Correctional facilities. (*See* ECF No. 307 at Pg ID 3336-38.) Specifically, there was an incident involving the frying of a chicken in the kosher kitchen at CRF after the kitchen was certified kosher, which would result in it no longer being kosher until it was kosherized again. The oven used to prepare kosher food at ICF is outside the vegan area. These incidents or matters were not presented in Plaintiffs' initial motion, however. A reply brief is not the proper place to raise entirely new arguments. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

[2] Plaintiffs list other reasons for not inspecting the kitchens within the time provided in the settlement agreement, such as the closure of MDOC's prisons due to the COVID-19 pandemic (*see* ECF No. 297 at 3155); however, the reasons are not relevant to deciding their motion.

3

(ECF No. 249.)  The Court denied Plaintiffs' motion less than two weeks before they filed their current motions.  (ECF No. 296.)

The Court denied the motion because it found "no indication that [certification in accordance with Orthodox Jewish beliefs] was the intent of the Settlement Agreement, []or this lawsuit …."  (ECF No. 296 at Pg ID 3149.)  As the Court noted, the Class certified is not limited to Orthodox Jews and Plaintiffs never argued that this litigation is only about the religious beliefs of Orthodox Jews or that Orthodox certification was required.  (*Id.*)  Perhaps most importantly, the word "Orthodox" appears nowhere in the settlement agreement, much less in reference to the type of certification required.  (*Id.*)

Under Michigan law, "'an agreement to settle a pending lawsuit is a contract and is reviewed by the legal principles applicable to contract construction and interpretation.'"  *Mich. Mut. Ins. Co. v. Indiana Ins. Co.*, 637 N.W.2d 232, 235 (Mich. Ct. App. 2001) (quoting *Walbridge Aldinger Co. v. Walcon Corp.*, 525 N.W.2d 489, 491 (Mich. Ct. App. 1994)).  "'The primary goal in the construction or interpretation of any contract is to honor the intent of the parties.'"  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 271 F.3d 235, 238 (6th Cir. 2001) (quoting *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n. 28 (Mich. 1994)).  The court must "'look for the intent of the parties in the words used in the

instrument[.]'" *Id.* (quoting *Mich. Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941)).

The words in a contract should be given their plain ordinary meaning. *MLW Assoc. v. Certified Tool & Mfg. Corp.*, 106 F. App'x 307, 312 (6th Cir. 2004) (citing *Bandit Indus. Inc. v. Hobbs, Int'l, Inc.*, 620 N.W.2d 531, 533 (Mich. 2001); *Rasheed*, 517 N.W.2d at 24; *Bianci v. Auto Club of Mich.*, 467 N.W.2d 17, 20 (Mich. 1991)). Courts may refer to dictionary definitions to ascertain the plain and ordinary meaning of undefined terms. *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 544 (Mich. Ct. App. 2007) (citing *Cole v. Auto Owners, Inc.*, 723 N.W.2d 922, 924 (Mich. Ct. App. 2006)). "Importantly, however, a word is not ambiguous simply because dictionary definitions differ." *Cole*, 723 N.W.2d at 924 (citing *Koontz v. Ameritech Servs., Inc.*, 645 N.W.2d 34, 42 (Mich. 2002)).

The Oxford English Dictionary defines "kosher" as "[r]ight, good; applied to meat and other food prepared according to the Jewish law." *Kosher*, Oxford English Dictionary (2d ed. 1989). The Merriam-Webster Dictionary defines the word as "sanctioned by Jewish law especially: ritually fit for use." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/kosher (accessed Feb. 23. 2021.) Neither definition speaks to Orthodox Jewish law specifically. Both definitions are consistent with the answer Plaintiffs' counsel gave the Court at the final approval hearing when asked to address a class

5

member's objection to the settlement agreement because it failed to provide for "[r]ecognized Orthodox Kosher certification":

> Your Honor, having talked with our expert in this case and he was a rabbi, and also having dealt with MDOC personnel they brought in to inspect their kitchen, we got that long e-mail from them on it, that it has to be certified to be kosher under Jewish law.[3]
> …
> Whether it is a Conservative rabbi certifying it, whether it's a straight up Orthodox rabbi, it is a Jewish certification and there are standards set out in there on what Certification means. That's my understanding of having talked to an Orthodox rabbi and I hate to say it any other way but just a regular rabbi.

At the time, counsel did not direct the Court to the definition of "kosher" found in Michigan's penal code, Mich. Comp. Laws § 750.297e(1), which Plaintiffs refer to in their reply brief to demonstrate the ordinary meaning of the word. (*See* ECF No. 307 at Pg ID 3332.) Plaintiffs have never previously cited this definition to support their current definition of "kosher." There certainly is nothing to suggest that the parties were aware of this definition or intended its meaning when they entered into the settlement agreement.[4]

---

[3] The parties certainly could have chosen to modify the term "Jewish law"—e.g., in accordance with the interpretation of "Orthodox" or "Conservative" Judaism—but they did not. The term is not rendered ambiguous by the absence of such narrowing language.

[4] Plaintiffs' interpretation also is inconstant with how the word is used elsewhere in the settlement agreement, for example in describing what it means to "liv[e] kosher" and thereby become eligible for kosher meals and with respect to the certification required for prepackaged meals. Yet, courts are required to give a

As the settlement agreement does not require Defendant to secure Orthodox kosher certification, the Court declines Plaintiffs' request to order Defendant to show cause why she should not be held to have violated its terms. For the same reasons, the Court denied Plaintiffs' request for discovery.

Accordingly,

**IT IS ORDERED** that the pro se motions filed by Gerald Ackerman and Daniel Horacek (ECF Nos. 299, 309) are **STRICKEN**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to enforce the settlement agreement (ECF No. 297) and motion for discovery (ECF No. 298) are **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 3, 2021

---

word the same meaning throughout an agreement or contract. *See Thiel v. Goyings*, 939 N.W.2d 152, 160 (Mich. 2019) ("When a document repeatedly uses a term or phrase, we assume that it carries the same meaning throughout.").